In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1581

CLARENCE M. EASTERLING,

*Plaintiff-Appellant,*

*v.*

MICHAEL THURMER, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cv-01392-PP — **Pamela Pepper**, *Judge.*

SUBMITTED OCTOBER 18, 2017[*] — DECIDED JANUARY 5, 2018

Before FLAUM, RIPPLE, and ROVNER, *Circuit Judges.*

PER CURIAM. Clarence Easterling, a Wisconsin inmate, brought this action against correctional officials under

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

42 U.S.C. § 1983, contending that they violated his constitutional rights to due process of law and freedom of association by denying him visits with his daughter in 2004 and 2013. With respect to the claims based on 2004 events, the district court dismissed on the pleadings. It ruled that they were time-barred. With respect to the claims based on 2013 events, it later entered summary judgment for the defendants, concluding that other defenses blocked that claim.

The district court correctly ruled that Mr. Easterling's claims arising out of actions taken in 2004 were barred by the statute of limitations. The remaining defendants permissibly denied him visits in 2013 because he did not use the correct procedure to request them. We also have considered Mr. Easterling's other contentions, but none has merit. The judgment of the district court is therefore affirmed.

# I

## BACKGROUND

For the claims dismissed as untimely, we rely on facts alleged in Mr. Easterling's complaint. *See Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir. 2017). For the remaining claims, we view the entire record in the light most favorable to Mr. Easterling. *See Murphy v. Rychlowski*, 868 F.3d 561, 565 (7th Cir. 2017).

Mr. Easterling was convicted in 1998 of sexually assaulting a minor female and sentenced to probation. In 2001, just before he was sentenced to twenty-five years in prison for armed

robbery,[1] his daughter, A.N., was born. He and A.N.'s mother share joint custody of her. Mr. Easterling is currently imprisoned at the Wisconsin Secure Program Facility, where he wants A.N. to visit him.

In Wisconsin, a minor child can visit an inmate only when the inmate complies with a formal visitation process. Wis. Admin. Code DOC § 309.08(1)(b) (2017). According to a Division of Adult Institutions ("DAI") policy, the inmate must send a questionnaire (which solicits the visitor's consent) to the minor's legal guardian, who must complete and return it to the prison.[2] The warden then has discretion to deny visits if, among other reasons, the warden has "reasonable grounds" to believe that "the inmate's offense history indicates there may be a problem with the proposed visitation" or if "the proposed visitor may be subjected to victimization." *Id.* § 309.08(4)(f)–(g). Upon denial, which is effective for six months unless otherwise noted, the inmate can file a grievance challenging the decision, or the prospective visitor can write a letter to the warden. *Id*. § 309.08(1)(f), (6).

In 2004, two years after Mr. Easterling's sentencing, A.N. (through her mother) sought a visit with him at the prison where he was then housed. After receiving the completed questionnaire, Phillip Kingston, the warden of that prison, assisted by an officer who handled inmate-visitation requests at that time, denied the request. They cited a requirement that Mr. Easterling complete sex offender treatment before being

---

[1] Mr. Easterling's total sentence comprised twenty years' confinement with ten years of extended supervision; five years' confinement with five years of extended supervision; and two, one-year concurrent terms.

[2] DAI Policy # 309.06.01, *available at* R.77-1 at 6–8.

allowed to visit with his daughter. Mr. Easterling filed an inmate complaint challenging the denial, which prison officials dismissed. Mr. Easterling then wrote to the warden in January 2005, asking "if he would ever be allowed to receive a visit from his daughter."[3] According to Mr. Easterling, Warden Kingston answered that visits "depended on [Easterling]" and could occur after "completion of recommended programming."[4]

During a prison intake assessment in 2002, a psychologist had recommended that Easterling complete sex offender treatment as part of his recommended programming. When his visitation request was denied in 2005, Mr. Easterling did not ask the warden what treatment he needed or if he could receive it. He believed that he did not need sex offender treatment then because, he alleges, he is not a "sex offender" under Wisconsin law.[5] He acknowledges now, however, that he would complete such treatment if offered it. (He has been on a department-wide waiting list for the program, but only those close to their release date receive priority.)

Nine years after he was denied visitation, Mr. Easterling was transferred to the Wisconsin Secure Program Facility. A month after his move, in May 2013, he sent information requests to defendants Tim Haines (the warden) and Debra Adams (his probation and parole agent), asking them if he could visit with his daughter. He did not use the formal visitation

---

[3] R.21 ¶ 83.

[4] *Id*. at ¶ 84.

[5] *Id*. at ¶¶ 36–47, 54, 69.

process. Warden Haines and Ms. Adams responded to the requests. Warden Haines told Mr. Easterling that he could file an inmate complaint. Mr. Easterling complied, but Warden Haines dismissed it. Ms. Adams explained that he needed to complete sex offender treatment, though it is not currently available and he is not a priority candidate.

Mr. Easterling's next step was this suit. He contends that defendants have denied him visits with his daughter since 2004, in violation of his First Amendment right of association and due process. The district court entered judgment on the pleadings for the defendants associated with the events from 2004 to 2005. The court reasoned that those events fall outside Wisconsin's six-year statute of limitations, applicable to § 1983 actions, *see Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989). The court also rejected Mr. Easterling's arguments for extending the time to sue. After discovery, the court entered summary judgment for Warden Haines and Ms. Adams. It concluded that their responses to Mr. Easterling's "information requests" in 2013 were not formal "denials" of visitation, so neither Warden Haines nor Ms. Adams were liable for violating Mr. Easterling's rights. The court also denied Mr. Easterling's requests for a court-recruited lawyer.

## II

## DISCUSSION

Mr. Easterling now maintains that the defendants have violated his due process and First Amendment rights to association since 2004 by denying him visits with his daughter. He argues that the defendants may not validly rely on his nearly

twenty-year-old conviction for sexual assault to justify that denial.

Prisoners retain a limited constitutional right to intimate association, established by the Supreme Court in *Turner v. Safley*, 482 U.S. 78**,** 95–96 (1987), and confirmed in *Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003). *Turner* holds that limits on prisoners' rights are valid if "reasonably related to legitimate penological interests." 482 U.S. at 89. *Overton* suggests that limits on family visits with a prisoner may violate that rule if "permanent or for a [long] period" or if "applied in an arbitrary manner." 539 U.S. at 137. We therefore have said, albeit in a nonprecedential decision, that a prisoner—even a sex offender—who alleges that a permanent ban on visits with his minor children has no legitimate justification states a valid constitutional claim. *See Harris v. Donahue*, 175 F. App'x 746, 748 (7th Cir. 2006) (unpublished).

Today, we confirm, this time in a published opinion, that prison officials may violate the Constitution by permanently or arbitrarily denying an inmate visits with family members in disregard of the factors described in *Turner* and *Overton*.[6] In

---

[6] In this respect, we join the weight of authority applying *Overton v. Bazzetta*, 539 U.S. 126 (2003), and holding that, although inmates do not have an absolute right to visitation, prison officials may not restrict an inmate's visitation with family members without balancing the inmate's interests against legitimate penological objectives. *See, e.g.*, *Dunn v. Castro*, 621 F.3d 1196, 1205 (9th Cir. 2010) (noting that "prisoners do not have an absolute right to visitation, [because] such privileges are necessarily subject to the prison authorities' discretion, *provided their administrative decisions are tied to legitimate penological objectives*" (emphasis added)); *Wirsching v. Colorado*, 360 F.3d 1191, 1201 (10th Cir. 2004) (upholding denial of visitation between incarcerated sex offender and his child *after* applying *Turner* factors).

this case, however, we need not confront whether the Department violated this standard, or what the precise contours of the standard are, because the district court correctly concluded that there are valid defenses to Mr. Easterling's claims.

First we address the statute of limitations. Mr. Easterling contends that the district court erred by ruling that his claim about the denial of visitation in 2004 was untimely. He submits that the 2004 denial was a "continuing violation" and therefore renders his suit timely. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002). He characterizes his injury as a continuous denial of visits with his daughter for over ten years that began in 2004 and analogizes this situation to cases of prolonged indifference by prison staff to inmates' medical needs. *See, e.g.*, *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (long-term prison conditions caused cumulative injury that accrued later for statute-of-limitations purposes); *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (every day prison officials failed to treat condition "marked a fresh infliction of punishment that caused the statute of limitations to start running anew").

We cannot accept this characterization or the suggested analogy. The 2004 denial was complete once the visitation was denied, and Mr. Easterling could have sought redress then. *See Pouncil v. Tilton*, 704 F.3d 568, 581–82 (9th Cir. 2012) (ruling that second denial of conjugal visits was independently actionable from original denial for limitations purposes). Second, in medical-indifference cases, it may be unreasonable to require a plaintiff to bring multiple suits for ongoing injuries that are not easily allocable to separate suits. *See Turley*, 729 F.3d at 651. But here the denial in 2004 was effective only

for six months. It is therefore reasonable to require a separate suit then.

Mr. Easterling's other reply to the limitations defense—equitable estoppel—also fails. He contends that he did not sue earlier because he relied on the warden's assurance in 2005 that if he completed treatment, he could visit with his daughter. But, he says, he did not find out until 2013 that he needed sex offender treatment, which was unavailable to him. These allegations do not justify equitable estoppel. "Equitable estoppel, which is a doctrine of federal law, 'comes into play if the defendant takes active steps to prevent the plaintiff from suing in time … .'" *Rosado v. Gonzales*, 832 F.3d 714, 716 (7th Cir. 2016) (quoting *Shropshear v. Corp. Counsel of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001)). Such a situation can occur if the defendant "promis[es] not to plead the statute of limitations," *id.* (quoting *Shropshear*, 275 F.3d at 595), or "prevents a plaintiff from obtaining information that he needs in order to be able to file a complaint that will withstand dismissal," *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010). Here, Mr. Easterling knew that prison officials had denied him visits with A.N. in 2004. The warden's statement about treatment did not "prevent" Mr. Easterling from knowing that he could sue.

Mr. Easterling also contends that the district court improperly entered summary judgment for Warden Haines and Ms. Adams when it reasoned that these officials did not "deny" him visits with A.N. in 2013. But even if their responses were "denials" of visits, Mr. Easterling cannot prevail. Wisconsin prison officials may not consider a request for a minor's visit unless the minor's guardian has returned a completed questionnaire, initiated by the inmate through the

formal visitation process, and consented to the visit. *See* Wis. Admin. Code DOC § 309.08(1)(b); DAI Policy # 309.06.01. Mr. Easterling does not challenge the penological legitimacy of this procedure or dispute that he did not follow it. The procedure ensures that the visitor, and not just the inmate, wants the visit. Because a legitimate penological reason, the lack of visitor consent, justified any "denial" in 2013, the defendants are not liable. *See Turner*, 482 U.S. at 89; *Woods v. O'Leary*, 890 F.2d 883, 887 (7th Cir. 1989) (restriction that required compliance with prison procedures was reasonable).

Finally, we address Mr. Easterling's contention that the district court should have recruited counsel for him. The district court *did* recruit counsel for Mr. Easterling for the limited purpose of mediation. But Mr. Easterling says he should have had legal assistance earlier. He requested such visitation four times, each time showing that he had contacted lawyers to no avail. He argued that his mental-health issues (attention-deficit and hyperactive disorders, mood disorder, and depression), his limited access to the law library, and the complexity of his case supported recruiting counsel. Each time, the court correctly assessed the need for the assistance of counsel and determined that the task at hand did not require such assistance. The court also reasonably concluded that Mr. Easterling's ability to present arguments was "quite advanced," as evidenced by his comprehensive, organized filings and sophisticated arguments.[7] The district court evaluated "the particular plaintiff's capacity as a layperson to coherently present" the relevant facts and legal argument. *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (quoting *Pruitt v. Mote*,

---

[7] R.37 at 2.

503 F.3d 647, 655 (7th Cir. 2007) (en banc)). We therefore cannot say that the district court abused its discretion in declining to recruit counsel.

## Conclusion

The judgment of the district court is therefore

AFFIRMED.