RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

LA BAMBA LICENSING, LLC,

> *Plaintiff-Appellee*,

*v.*

> No. 22-5853

LA BAMBA AUTHENTIC MEXICAN CUISINE, INC., nka
La Villa Rica Mexican Cuisine, Inc.,

> *Defendant-Appellant*.

─────────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:16-cv-00527—Charles R. Simpson III, District Judge.

Decided and Filed:  July 27, 2023

Before:  GILMAN, LARSEN, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Dawn L. McCauley, Lebanon, Kentucky, for Appellant.  Bradley M. Stohry, REICHEL STOHRY DEAN LLP, Indianapolis, Indiana, for Appellee.

─────────────────

## OPINION

─────────────────

LARSEN, Circuit Judge.  La Bamba Licensing, LLC ("La Bamba") filed suit against La Bamba Authentic Mexican, Inc. (now known as "La Villa Rica Mexican Cuisine, Inc.") for trademark infringement and unfair competition in violation of the Lanham Act and for common law unfair competition, alleging that La Villa Rica infringed La Bamba's registered trademark "LA BAMBA."  The district court granted summary judgment in favor of La Bamba.

The district court then granted La Bamba an award of profits, costs, and attorneys' fees. La Villa Rica appeals the award of profits and attorneys' fees. We AFFIRM.

I.

La Bamba Licensing, LLC ("La Bamba") operates a series of Mexican restaurants in the Midwest under the name "La Bamba." In 1998, La Bamba registered "LA BAMBA" as a trademark for restaurant services and for various food items in the United States. *See* U.S. Registration Nos. 2,141,892; 3,598,169; 3,598,167; and 3,527,867. Nearly two decades later, La Bamba Authentic Mexican Cuisine, Inc. (hereinafter "La Villa Rica") opened a Mexican restaurant under the name "La Bamba Authentic Mexican Cuisine" with one location in Lebanon, Kentucky—about sixty-five miles from one of La Bamba's restaurants in Louisville, Kentucky.

Shortly after La Villa Rica opened its restaurant, La Bamba learned of its use of the infringing mark. On May 10, 2016, La Bamba sent a cease-and-desist letter to La Villa Rica. The letter advised La Villa Rica of La Bamba's federal trademark registrations and demanded that La Villa Rica cease use of the LA BAMBA mark. La Villa Rica refused, explaining that it did "not see any basis for [La Bamba's] demands." On August 16, 2016, La Bamba sued La Villa Rica, alleging trademark infringement and unfair competition under the Lanham Act and common law unfair competition under Kentucky law. On October 13, 2017, nearly a year and a half after La Villa Rica received actual notice of La Bamba's trademark rights, La Villa Rica changed the name of its restaurant from "La Bamba Authentic Mexican Cuisine" to "La Villa Rica Authentic Mexican Cuisine, Inc."

In January 2018, the district court granted summary judgment in favor of La Bamba on all claims and permanently enjoined La Villa Rica from using the LA BAMBA mark in connection with its services. Following the district court's summary judgment ruling, La Bamba filed a motion seeking: (1) La Villa Rica's profits, (2) La Bamba's costs in bringing the action, and (3) La Bamba's attorneys' fees. After an evidentiary hearing, the district court awarded La Bamba $50,741.76 ($22,907.26 in profits; $27,309.50 for attorneys' fees; and $525.00 for court costs).

II.

La Villa Rica appeals the court's decision to award profits and attorneys' fees, but it does not appeal the calculation of either award. We review both awards under an abuse-of-discretion standard. *See La Quinta Corp. v. Heartland Props. LLC*, 603 F.3d 327, 342 (6th Cir. 2010); *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006).

A.

Under the Lanham Act, a plaintiff who succeeds on an infringement claim "shall be entitled, . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). In assessing the equities of the case, we have instructed courts to consider "a wide range of factors, including":

> the defendant's intent to deceive, whether sales were diverted, the adequacy of other remedies, any unreasonable delay by the plaintiff in asserting its rights, the public interest in making the misconduct unprofitable, and "palming off," i.e., whether the defendant used its infringement of the plaintiff's mark to sell its own products to the public through misrepresentation.

*La Quinta*, 603 F.3d at 343. The equities may weigh in favor of an award of profits without a showing of willful infringement, but the "defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020).

Here, after an evidentiary hearing, the magistrate judge determined that two of the *La Quinta* factors, as well as "willfulness," counted as a separate factor, weighed in favor of an award of profits, two factors weighed against, and two factors were not relevant. So, it concluded "that an award of profits is equitable." The district court adopted the magistrate's recommendation. We think the court's calculations were a little off. But, ultimately, we find no abuse of discretion in the district court's award.

First, to the extent that the district court treated the task of equitable balancing as a math problem (3 > 2), that was error. Although we have set forth criteria to guide the district court's

discretion, the list is not exhaustive. By its own terms, the list "includ[es], inter alia," the six factors we have described. *La Quinta*, 603 F.3d at 343. And we would not presume that, in every case, the factors will have equal weight.

Next, to the extent that it matters, it is not clear to us that "willfulness" is an additional factor, rather than a variation on the first ("the defendant's intent to deceive") or an element of the fifth ("the public interest in making the *misconduct* unprofitable"). *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) ("[W]hether the defendant had an intent to confuse or deceive []addresses whether there has been a willful infringement on the trademark rights of the plaintiff, or whether the defendant has acted in bad faith."); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 370 (5th Cir. 2000) (considering willfulness under the first factor).

Third, the district court said that the lack of "unreasonable delay by the Plaintiff in asserting its rights . . . weighs in *favor* of an award of profits." But that gets the baseline wrong. Timely assertion of rights is the expectation. And, because an accounting of profits is an equitable award, it "is never automatic and never a matter of right." 5 McCarthy on Trademarks and Unfair Competition § 30:59 (5th ed.). So the fact that a plaintiff did not unreasonably delay asserting its rights cannot be a plus factor. Though a plaintiff's unreasonable delay could surely count against an award, a plaintiff who acts as a plaintiff should is entitled to no bonus; in such situations, this factor remains neutral. *See Synergistic*, 470 F.3d at 176 ("A substantial delay between the commencement of infringement activities and the plaintiff seeking judicial relief should weigh against an award.").

These minor corrections do not require us to reverse the district court's award, however. District courts have "a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement." *La Quinta*, 603 F.3d at 342 (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997)). And, in light of the arguments presented below, we see no abuse of discretion here.

The district court noted that two factors (diverted sales and palming off) were not relevant here, as La Bamba conceded. No one challenges the district court's conclusion that the third factor cut against an award—an injunction was likely an adequate remedy to prevent further

damage to La Bamba given the distance between the two restaurants, the different dining styles of the restaurants, and the fact that La Villa Rica had changed its name. La Bamba's timely filing should have been considered neutral, however, as explained above. So, of the factors the district court considered, two *La Quinta* factors—the defendant's intent (factor one) and the "public interest in making the misconduct unprofitable" (factor five)—plus defendant's "willfulness" remained to support the award.

With respect to intent, the district court credited the testimony of La Villa Rica's owner, who said he was not aware of La Bamba's restaurant until he received the cease-and-desist letter; thus, the court found that La Villa Rica did not "intend[] to deceive anyone." But the court concluded that there was a strong public interest in making La Villa Rica's "misconduct unprofitable." That misconduct, of course, was the trademark infringement, which the court deemed "willful." Even after La Villa Rica received a cease-and-desist letter containing notice of La Bamba's registered mark, and "in the face of [its] attorney's advice that [it] might have a 'problem,'" La Villa Rica continued to use the LA BAMBA mark for a year and a half and "offered no legally sufficient explanation or support for its actions." Although the district court did not define "willful" behavior, and we seem to have adopted no authoritative definition ourselves,[1] the court's reasoning seems in line with the reasoning of other circuit courts considering similar circumstances. *See PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170–71 (11th Cir. 2019) (Without "other evidence of willfulness," merely continuing to sell products "under the color of" its own "valid federal trademark" after receipt of complaint alleging infringement of another's trademark could not support award of profits.); *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 210 (2d Cir. 2019) (explaining that failure to "halt sales of a challenged product" would not constitute willful behavior if "careful due diligence in response to an infringement claim leads [the defendant] to believe reasonably that it has not infringed").

---

[1]The Supreme Court did not define "willfulness" in *Romag Fasteners* either. *See Romag Fasteners*, 140 S. Ct. at 1498 (Sotomayor, J., concurring in the judgment) (noting that "[c]ourts of equity . . . defined 'willfulness' to encompass a range of culpable mental states—including the equivalent of recklessness, but excluding 'good faith' or negligence").

In the end, the district court rested its profits award on "the public interest in making the misconduct"—La Villa Rica's willful infringement—"unprofitable." To withhold an award, in these circumstances, the court concluded, "would significantly deprive Plaintiff of the intended benefit of the trademark process and disincentivize future potential infringers from taking seriously notice of a valid trademark when received."

In this court, La Villa Rica argues that this award cannot be sustained because it is punitive in nature. Section 35 of the Lanham Act, which authorizes recovery of "profits and damages," also states that "[s]uch sum . . . shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). We have concluded that this provision of "the Lanham Act expressly prohibits levying damages that may be classified as a 'penalty.'" *La Quinta*, 603 F.3d at 342.

La Villa Rica suggests that an award of profits becomes a "penalty," even in cases of "willful infringement of a registered trademark, unless that award is designed to compensate the plaintiff for its actual injuries." Appellant Br. at 8 (citing *Getty Petroleum Corp. v. Bartco Petroleum Corp.*, 858 F.2d 103, 113 (2d Cir. 1988)). Because the district court determined that La Villa Rica did not divert sales from La Bamba or engage in palming off, La Villa Rica suggests that the profits award was necessarily punitive, and therefore forbidden.[2]

We are skeptical. It appears to be true that "[a]n award of the trademark infringer's profits originated in the law as a way of compensating the plaintiff for sales lost to the infringer." 5 McCarthy on Trademarks § 30:59. But we have suggested, though perhaps not held, that various theories, "including unjust enrichment, deterrence, and compensation" can support an award of profits under the Lanham Act. *See Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 606–07 (6th Cir. 1991) (quoting *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989)); *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 423–24 (6th Cir. 2010) (same). Most

---

[2]We note also what La Villa Rica does *not* argue: it does not contend that the district court's award became "punitive" through its suggestion that an award of profits was necessary to deter *other* "future potential infringers from taking seriously notice of a valid trademark when received." General deterrence is often considered the province of "punitive or 'exemplary' damages." *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 25 (1991) (Scalia, J., concurring in the judgment) (explaining that the point of "exemplary damages" is to "at once impose a punishment on the defendant and hold up an example to the community" (quoting Theodore Sedgwick, Measure of Damages 522 (4th ed. 1868))). But La Villa Rica did not advance this argument either here or in the district court, so we do not consider it further.

authorities seem to agree. *See* 5 McCarthy on Trademarks § 30:59 (citing *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) ("Courts have interpreted the rule to describe three categorically distinct rationales."), and *Marshak v. Treadwell*, 595 F.3d 478, 495 (3d Cir. 2009) ("We have held that an accounting of an infringer's profits is available if the defendant is unjustly enriched, if the plaintiff has sustained damages, *or* if an accounting is necessary to deter infringement." (internal quotation marks and citation omitted))); *see also PlayNation Play Sys.*, 924 F.3d at 1170 ("An accounting of a defendant's profits is appropriate where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct."). Here, the district court said that one purpose of its award was to deter; another was to recognize that La Villa Rica's infringement "significantly deprive[d] Plaintiff of the intended benefit of the trademark process." *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 122–23 (9th Cir. 1968) (explaining that the unjust enrichment theory "provid[es] protection to the value of the good will built up in the trade-mark itself"). So the award would seem to fit within the commonly-recognized, non-punitive, theories of trademark recovery.

We need not dwell on this topic, however, because La Villa Rica's objections to the magistrate judge's Report and Recommendation nowhere suggested that the award was punitive. Instead, La Villa Rica merely objected that the magistrate judge had not properly balanced the equities and asked the district court to "enter a judgment for a sum that would seem to 'be just according to the circumstances of the case.'" "In this circuit, the failure to object to a magistrate judge's Report and Recommendation results in a waiver of appeal on that issue as long as the magistrate judge informs the parties of the potential waiver." *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019). Here, the Report and Recommendation contained such a warning. So we do not consider this argument further.

To the extent that La Villa Rica argues in this court that the district court abused its discretion in balancing the equities, we disagree. La Villa Rica does not contest the district court's factual findings and has failed to preserve its lone claim of legal error. So, in light of the arguments presented, we see no basis to disturb the district court's exercise of its wide discretion

to "fashion[] an appropriate remedy" in this case. *La Quinta*, 603 F.3d at 342 (quoting *U.S. Structures*, 130 F.3d at 1191).

B.

La Villa Rica next challenges the district court's decision to award attorneys' fees. The Lanham Act provides that in "exceptional cases," the court may award "reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Lanham Act does not define "exceptional," but the Supreme Court has defined an "exceptional" case under the Patent Act as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In *Slep-Tone Ent. Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 318 (6th Cir. 2015), we held that this definition of "exceptional" also applied to attorneys' fees awards under the Lanham Act. *See also Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019); *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 478 (6th Cir. 2022), *reh'g denied*, No. 20-3598, 2022 WL 3237492 (6th Cir. Aug. 10, 2022).

*Octane Fitness* directs courts to consider a variety of factors in determining whether to award fees. 572 U.S. at 554. In *Max Rack*, we explained:

> The plaintiff might have an unusually strong (or unusually weak) case on the merits. Blatant trademark infringement might justify an award for the plaintiff, whereas a frivolous infringement claim might justify one for the defendant. Or the losing party might have litigated the case in an unreasonable manner—for example, by requesting costly discovery to coerce a settlement despite the weakness of its claims.

40 F.4th at 478 (internal citations omitted). "In the end," the Act gives discretion to the "district court to decide under the totality of the circumstances whether the case before it has the 'rare' qualities that distinguish it from a typical case." *Id.*

The district court did not apply the *Octane Fitness* standard. Instead, relying on *Wynn Oil*, the district court defined an "exceptional case" as one "in which the infringement was 'malicious, willful, fraudulent, or deliberate.'" 943 F.2d at 607. That definition was incomplete.

In *Max Rack*, we rejected the plaintiff's invocation of a similar "bright-line rule" saying that fees could be awarded whenever "a defendant's intentional infringement continued after the plaintiff sued." 40 F.4th at 479. Such a "rigid rule," we said, "conflicts with the Supreme Court's more flexible totality-of-the circumstances approach to this inquiry." *Id.*

Even so, we cannot conclude that there was reversible error here. Both parties presented the *Wynn Oil* standard to the district court. Indeed, La Villa Rica's objections to the magistrate's report agreed that *Wynn Oil*'s "malicious, willful, fraudulent or deliberate" standard represented the "applicable caselaw," disputing only whether the magistrate judge had correctly "appli[ed] this standard to the case at bar." So La Villa Rica has waived any objection to the legal standard that it might have raised. *See Wandahsega*, 924 F.3d at 878. And in any event, although La Villa Rica does cite *Octane Fitness* in its brief on appeal, it does not argue that the district court applied the wrong legal standard below. Instead, it argues only that its conduct was not "in bad faith" or "malicious, fraudulent, willful, or deliberate." So if La Villa Rica had any other factors that it wished the court to consider in assessing the "totality of the circumstances" under *Octane Fitness*, it has not presented them in this litigation.

The district court concluded that La Villa Rica's conduct was sufficiently "willful" to constitute "an exceptional case that warrants the award of attorneys' fees." That conclusion rested on the same evidence and reasoning that supported the "willfulness" finding with respect to the award of profits. La Villa Rica does not argue that the same conduct cannot support both an award of fees and profits. Given the parties' litigating position, and the facts of this case, we cannot say that the district court abused its discretion in awarding attorneys' fees.

\* \* \*

We AFFIRM.