**CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, Plaintiff–Appellant,**

v.

**ASSOCIATED CONTRACTORS, INC., Russell E. Hoffman, Jimmy Beck, Alpha Professional Services, Inc., Defendants,**

**Bituminous Casualty Corporation, Defendant–Appellee.**

No. 88–8466.

United States Court of Appeals, Eleventh Circuit.

July 20, 1989.

Tyrus R. Atkinson, Atlanta, Ga., for plaintiff-appellant.

John C. Bach and Bovis, Kyle & Burch, Atlanta, Ga., for defendants-appellees.

Before KRAVITCH and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

A lawyer's duty under Rule 11 of the Federal Rules of Civil Procedure is at issue in this case. We conclude that the district court erroneously awarded Rule 11 sanctions against the plaintiff and its attorney; accordingly we reverse.[1]

## I.

The Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints (the "Church") entered into a contract with Associated Contractors in February 1985 to repair the roof of a building on Harkers Island, North Carolina. On April 10, 1985, during the repair, a fire occurred which caused substantial damage to the building. This litigation arose from the Church's attempt to secure compensation for its loss.

Before the repair contract was signed, Associated Contractors was obligated to procure insurance on the project and provide a certificate evidencing the insurance to Building Consultant Services (BCS), the Church's local agent; prior to execution of the contract, Roger DeLisle (who along with his wife is a principal of BCS) assured Leo Findlay, the Church's regional manager, that the project was insured. After the fire, BCS forwarded to the Church a certificate of insurance dated March 10, 1985. The certificate—ostensibly drafted by Alpha Professional Services, a registered agent of the defendant Bituminous Casualty Corporation—recited that Associated Contractors was insured by "Bituminous Casualty Company." Associated Contractors' principals, Russell and Rosalind Hoffman, were also employees of Alpha.

BCS requested Associated Contractors to notify its insurance carrier, but no insurance adjuster arrived on Harkers Island. BCS and the Church mailed letters requesting action to Alpha and Bituminous, but neither Alpha nor Bituminous responded. Somewhat concerned, the Church hired Bruce Potts, a private arson investigator, to look into the matter of insurance.

Potts spoke with management employees at Associated Contractors, BCS and Alpha. Aware of a burgeoning problem with its insurance coverage, the Church retained attorney Tyrus Atkinson in April 1986 to represent it in connection with the Harkers Island loss. In September 1986 the Church commenced suit against Mr. Hoffman, Associated Contractors, Alpha, and Bituminous.

Bituminous filed an answer in which it denied liability to the Church. In March 1986, after conducting substantial discovery, Bituminous requested the Church voluntarily to dismiss the claims against it, threatening a Rule 11 motion for sanctions were dismissal not forthcoming. The Church responded in April, stating that it intended to proceed with the original complaint against Bituminous. Bituminous then moved to amend its answer and assert a Georgia-law counterclaim against the Church for frivolous litigation, and likewise alleged a Rule 11 violation. The Church immediately filed a motion to amend its

---

1. Bituminous asserts that because the Church filed a notice of appeal in the name of the Church, and the award of fees was joint and several against the Church and its counsel, this court lacks jurisdiction over the counsel's appeal. *Marshak v. Tonetti*, 813 F.2d 13 (1st Cir. 1987) (appellant-client lacked standing to appeal award of Rule 11 fees against attorney). In several cases, however, we entertained jurisdiction over an award of fees made against the attorney in which the appeal was filed in the name of the client. *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir.1987) (in banc) (fees assessed only against attorney, appeal taken in name of client); *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848 (11th Cir.1988) (same); *Ortho Pharmaceutical Corp. v. Sona Distributors*, 847 F.2d 1512 (11th Cir.1988) (fees assessed against client and attorney, appeal taken only in name of client). In light of this authority and because of the close privity between a lawyer and his client with respect to the conduct of litigation, it would be unjust to refuse to hear counsel's appeal; we therefore excuse any omission. *Cf. G.E. Smith & Associates, Inc. v. Otis Elevator Company*, 608 F.2d 126, 127 (5th Cir.1979) (only one co-plaintiff filed appeal; co-plaintiffs were not "one and the same but [were] different entities in contract with one another, one as owner and the other as party to do construction work;" court dismissed appeal).

complaint, seeking to change its allegations against Bituminous.

In June, the district court denied Bituminous's motion to amend its answer, and announced that it would hold a hearing to consider the Church's motion to amend. Following oral argument, the Church served a motion for voluntary dismissal of Bituminous. Bituminous refused to be dismissed, preferring to remain in the action to settle matters between itself and Mr. Hoffman, but moved for attorneys' fees and costs against the Church pursuant to Rule 11. The district court granted the Church's motion to dismiss Bituminous, stating that it would not consider Bituminous's motion for costs and fees until the Church was given an opportunity to respond to the Rule 11 allegation.

In its brief in support of Rule 11 sanctions, Bituminous argued that "[c]entral to the allegations of the ... Complaint is the premise that the Church had in its possession prior to the April 10, 1985 fire a Certificate of Insurance." Bituminous then devoted several pages to explaining why the Church knew or should have known that BCS, the Church's agent, did not have a certificate prior to the fire. Bituminous quotes Findlay's April 1987 deposition, in which he indicated that "possibly" within three or four months after the fire, he was aware that the insurance certificate had not been received prior to the fire. Bituminous also quotes a November 1986 affidavit of Roger DeLisle:

> There is controversy over the cause of the fire and I found a local investigator, Bruce Potts, and he was hired by the Church. I have given Mr. Potts essentially the same information about the Certificate, in that I did not have a Cer-

tificate of Insurance when the job started and I did not realize that I did not have a Certificate until after the fire. Concluded Bituminous: "the factual premise which was the only basis for naming Bituminous in the original Complaint—that is, that [the Church] had a Certificate of Insurance with Bituminous' name on it prior to the fire, is completely incorrect." [2]

The Church responded explaining the basis for its allegations against Bituminous: The Church relied on Mr. Hoffman's oral misrepresentation that the project was insured as well as the receipt of the insurance certificate prior to the fire; even though subsequent discovery may have cast doubt on the proposition that the certificate was received prior to the fire, the substantive allegations against Bituminous still held under an agency theory of liability—Bituminous could be liable for the neglect of Alpha, which in turn could be liable for the tales of Hoffman, Alpha's agent. *See Stillson v. Prudential Ins. Co. of America*, 202 Ga. 79, 42 S.E.2d 121 (1947) (insurance company can be liable for the fraud of its agent). Further, noting that the certificate recited on its face that it was issued on March 10, 1985, the Church claimed that it was entitled to rely upon a Georgia statute to establish that the date was presumptively correct.[3]

Oral argument on the Rule 11 motion was held in November 1987. In its subsequent order, the district court found a Rule 11 violation and granted Bituminous's motion for costs and fees. The court stated as follows:

> At the time [Bituminous threatened a Rule 11 motion], the parties had conducted considerable discovery and all evidence at that point revealed that [the

---

**2.** Bituminous also stated that a certificate was found that was dated after the fire and the word "void" was marked across its face. As the Church pointed out in response, however, nothing suggests that this certificate was known to the Church at the filing of the complaint.

**3.** Appended to the response was the January 1987 affidavit of Mr. DeLisle; in this statement DeLisle repudiated the statement he gave in November 1986. Responding to Bituminous's argument that Findlay was aware early on that a certificate had not been received prior to the

fire, the Church quoted a portion of the Findlay deposition omitted by Bituminous, in which Findlay stated that he was unaware until the date of the deposition that the certificate was received after the fire. The district court found that "[t]he testimony of Findlay does not illustrate that the plaintiff knew that the certificates were received after the fire, only that there was a problem with the certificates." No. 1:86–cv–2055–WCO, mem. op. at 9 (N.D.Ga. Mar. 9, 1988).

Church] did not have a certificate of insurance before the fire....

It would seem that a reasonable inquiry in a case such as this one would include a review of the certificate upon which the [Church] actually relied and an investigation concerning exactly when the document was received. Obviously such an investigation was not undertaken in this case....

A reasonable inquiry in this case by [the Church] should have included an examination of the certificate of insurance that [the Church] allegedly relied upon and an investigation into when the certificate was received by the [Church or its] representatives before the factual allegation that [the Church] relied upon the certificate of insurance *received before the fire* was included in the complaint. Although [the Church] contends that the reliance on a certificate received before the fire is insignificant to its claims against the defendants, the factual allegation that plaintiff had a certificate which it thought was valid underlies all the [Church's] allegations of fraud and conspiracy against defendant[s] Alpha [and Bituminous].

No. 1:86–cv–2055–WCO, mem. op. at 10–11 (N.D.Ga. Mar. 9, 1988) (emphasis in original). The court assessed Rule 11 sanctions jointly and severally against the Church and its counsel. The Church quickly served a motion for reconsideration, proffering affidavits of counsel, Potts, and Mr. DeLisle that showed the extent to which the provenance of the certificate had been investigated prior to filing the complaint. In a subsequent order the court acknowledged that a pre-filing investigation had occurred, but denied the Church's motion, finding that no reliance on any of the DeLisles' statements concerning the certificate was reasonable.

## II.

In relevant part, Rule 11 requires the attorney who submits a pleading to certify that "to the best of [the attorney's] knowledge, information, and belief formed after reasonable inquiry [the pleading] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. "Under [Rule 11,] the district court must focus on what was reasonable for an attorney to believe at the time the pleadings were filed, not on what the court later finds to be the case." *Threaf Properties v. Title Ins. Co. of Minnesota*, 875 F.2d 831, 835 (11th Cir. 1989).

In requesting Rule 11 sanctions, Bituminous argued that the Church did not have a reasonable basis for alleging that BCS had received a certificate of insurance prior to the fire. In its response the Church largely finessed the point, arguing that this factual question was of no great moment because the allegations against Bituminous would stand even if BCS received no certificate until after the fire. As noted above, however, the district court held that "the factual allegation that plaintiff had a certificate which it thought was valid underlies all the [Church's] allegations of fraud and conspiracy against defendant [Bituminous]."

Examining the face of the complaint only, the court's conclusion was correct because the complaint failed to allege an agency relationship between Mr. Hoffman and Alpha. Moreover, the Church's response to the Rule 11 motion did not supply the missing information to establish an agency relationship between Hoffman and Alpha; at most, the affidavits appended to the response state that the Hoffmans sold an insurance business to Alpha, and that Mrs. Hoffman was employed by Alpha. Not until its motion for reconsideration did the Church finally produce an affidavit alleging that Mr. Hoffman was Alpha's agent.[4]

■ Even had the complaint sufficiently alleged an agency relationship between Hoffman and Alpha, the better course for

---

4. The Church's amended complaint, which was filed before the Rule 11 proceedings, alleged that Mr. Hoffman was Alpha's agent but did not provide anything to substantiate the bare allegation.

the Church in responding to Bituminous's Rule 11 motion would have been to expose explicitly the basis upon which it made its factual allegation concerning the arrival date of the certificate, for in the absence of such an exposition, the district court could have awarded Bituminous fees and costs reasonably incurred to investigate the arrival date. Nevertheless, the response did contain enough information to show the district court that the Church had a reasonable basis for its allegation that BCS received the certificate prior to the fire. The response noted that the insurance certificate in BCS's possession was dated March 10, 1985, a full month prior to the fire. The Church called the court's attention to O.C.G.A. 11–1–202, which provides that

> A document in due form purporting to be a bill of lading, policy or certificate of insurance, official weigher's or inspector's certificate, consular invoice, or any other document authorized or required by the contract to be issued by a third party shall be prima-facie evidence of its own authenticity and genuineness and of the facts stated in the document by the third party.

O.C.G.A. § 11–1–202 (Michie 1982) (U.C.C. § 1–202).

Section 11–1–202 may only clearly apply to contracts governed by the Uniform Commercial Code, and a contract for building repairs would not likely fall under the Code. *E.g., Dixie Lime & Stone Co. v. Wiggins Scale Co.*, 144 Ga.App. 145, 240 S.E.2d 323 (1977). Nonetheless, in the absence of a Georgia case on point or the heavy weight of authority to the contrary, we cannot say that a lawyer could not make a "good faith argument for the extension" or "modification" of this provision to contracts involving services (and thus posit the prima facie genuineness of facts stated in certificates of insurance issued by third parties to satisfy obligations under a services contract). That said, on the basis of this statutory presumption counsel for the Church reasonably could have concluded that the date on the certificate of insurance could be used as prima facie evidence that BCS received the certificate prior to the fire;[5] unless, of course, the lawyer knew to the contrary. Significantly, the district court did not find that counsel or the Church *knew* at the commencement of the action that no certificate had been received prior to the fire.[6]

At the time Bituminous threatened Rule 11 sanctions, all sides agree that the evidence could not be shaped to show that BCS received a certificate prior to the fire. Yet in a letter to Bituminous, the Church maintained its refusal voluntarily to dismiss Bituminous from the action. Bituminous argues that even if the Church did not violate Rule 11 upon the filing of its complaint, this subsequent conduct constituted a Rule 11 violation.

By its terms, Rule 11 imposes an obligation on counsel at the time he or she files papers in the district court. The circuit courts of appeals appear to differ on whether Rule 11 imposes a continuing duty on counsel to amend previous pleadings when their factual or legal basis dissolves. *Compare Thomas v. Capital Security Services*, 836 F.2d 866, 874 (5th Cir.1988) (in banc) (disagreeing with "earlier decisions by this Court that impose upon an attorney a continuing obligation under Rule 11. Instead, we believe that a construction of Rule 11 which evaluates an attorney's conduct at the time a 'pleading, motion, or other paper' is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule."); *Gaiardo v. Ethyl Corp.*, 835 F.2d

---

**5.** The certificate was dated a full month prior to the fire. Associated Contractors was under a duty to deliver the certificate to BCS. Allowing a few days for mailing and administrative delay, it was at least plausible that BCS received the certificate prior to the fire.

**6.** As the district judge found, Findlay's deposition does not show that the Church "knew" prior to the filing of suit that no certificate was received prior to the fire. *See supra* n. 3. Although the November 1986 affidavit of Roger DeLisle, filed by Bituminous, might suggest that the Church at least had notice that no certificate was received, Mr. DeLisle repudiated his November 1986 statement in the January 1987 affidavit appended to the Church's response. (As an aside, in February 1987, Mr. DeLisle once again changed his mind.)

479, 484 (3d Cir.1987); *Hamer v. County of Lake,* 819 F.2d 1362, 1370 n. 15 (7th Cir. 1987); *and Oliveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987) *with Herron v. Jupiter Transportation Co.,* 858 F.2d 332, 336 (6th Cir.1988) (agreeing with cases that imposed a continuing obligation); *Flip Side Productions v. JAM Productions,* 843 F.2d 1024, 1036 (7th Cir.1988) (holding without discussion that "[a]t the close of discovery, ... [plaintiff] was obligated [by Rule 11] to dismiss [defendant] or suffer the consequences"); *and Lane v. Sotheby Parke Bernet, Inc.,* 758 F.2d 71, 73 (2d Cir.1985) (holding without discussion of Rule 11 cases that in assessing Rule 11 sanctions, district court should consider "whether appellant should have continued this action after completion of discovery").

We agree with the reasoning of the unanimous in banc Fifth Circuit; Rule 11 did not impose a continuing obligation on the Church to amend its complaint, at least if the complaint was reasonably interposed in the first place.[7] When the Church could no longer reasonably assert that BCS possessed the certificate prior to the fire, Rule 11 would have prevented the Church from raising that ground in opposition to a motion to dismiss.[8]

REVERSED.

---

7. *Collins v. Walden,* 834 F.2d 961 (11th Cir. 1987), is not to the contrary, despite a comment in *dicta. See id.* at 965 ("When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."). In *Collins,* the court upheld an award of Rule 11 fees against attorneys who after reasonable inquiry should not have signed the complaint. *Id.* at 966.

8. All post-appeal motions and cross-motions for sanctions are DENIED.