[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12828

_____

D.C. Docket No. 1:14-cv-01046-RWS

PLAYNATION PLAY SYSTEMS, INC.,
d.b.a. Gorilla Playsets,

Plaintiff - Appellee,

versus

VELEX CORPORATION,
d.b.a. Gorilla Gym,

Defendant - Appellant,

KIRIL ALEXANDROV, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 24, 2019)

Before MARCUS, JULIE CARNES, and KELLY,[*] Circuit Judges.

MARCUS, Circuit Judge:

PlayNation Play Systems, Inc., a company that makes and sells children's playground equipment, won a trademark infringement verdict against Velex Corporation. This is the case's second trip to our Court: in an earlier appeal, we affirmed the district court's judgment in part, upholding the entry of a permanent injunction preventing Velex from infringing on PlayNation's mark, but vacating an award of damages. PlayNation Play Sys., Inc. v. Velex Corp., 924 F.3d 1159, 1171 (11th Cir. 2019). After the district court entered its injunction, PlayNation discovered that Velex continued to sell and distribute goods using the infringing mark. The district court held Velex and its two officers and shareholders, Peter Velikin and Kiril Alexandrov, in civil contempt of court, found them jointly and severally liable for compensatory damages in the amount of $1,500, and awarded PlayNation attorneys' fees and costs in the amount of $46,462.25.

In this appeal, Velex argues that it made all reasonable efforts to comply with the injunction and that Velex and its officers should not be held liable for the actions of third parties that, they say, caused the infringing products to be sent to customers. Velex further argues that the district court erred by awarding attorneys'

---

[*] Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, sitting by designation.

2

fees in the absence of willful or grossly negligent noncompliance with the injunction.  Because the district court did not abuse its considerable discretion in holding Velex and its officers in contempt or in awarding PlayNation attorneys' fees and costs, we affirm.

I.

Plaintiff PlayNation Play Systems, Inc., makes children's outdoor playground equipment which it sells under the trademark "Gorilla Playsets." Velex Corp., in turn, sells doorway pullup bars -- suitable for all ages -- with attachable accessories for children, like swings and gymnastics rings, under the trademark "Gorilla Gym."  After PlayNation learned that Velex was using the "Gorilla Gym" name for its children's equipment, it sued for trademark infringement.

The parties stipulated that PlayNation's mark was valid, that it had priority over Velex's mark, and that Velex was using the mark without PlayNation's consent.  After a bench trial, the district court found that there was a likelihood of confusion at the retail level, making Velex liable for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1).  The court granted injunctive relief barring future infringement, awarded damages in the amount of $150,188, and canceled Velex's federal trademark registration.  The court set out the injunction this way:

> The Court therefore enters a permanent injunction against Defendant enjoining it from:

3

(1) developing, manufacturing, importing, using, marketing, selling, offering for sale, distributing, or installing any children's playground equipment or related accessories under the GORILLA GYM Name, or any variant thereof that is a colorable imitation or otherwise likely to be mistaken for or confused with PlayNation's GORILLA PLAYSETS Mark;

(2) using its trade name "GORILLA GYM" or "GORILLA GYM INDOOR PLAYGROUND" for the development, manufacture, import, use, marketing, sale, offering for sale, distribution, or installation of any children's playground equipment or related accessories, or any variant thereof which is a colorable imitation of or otherwise likely to be mistaken for or confused with PlayNation's GORILLA PLAYSETS Mark;

(3) otherwise infringing upon PlayNation's GORILLA PLAYSETS Mark; and

(4) otherwise unfairly competing with PlayNation or engaging in any deceptive trade practice, trading off of PlayNation's reputation or goodwill, or injuring PlayNation's reputation.

Velex moved to modify the injunction, asking for permission to continue using the "Gorilla Gym" name for 45 days and to sell already-boxed goods for another 90 days, among other things. The court denied the motion, explaining that Velex "essentially [sought] permission to continue to infringe upon Plaintiff's mark." Following a separate appeal, this Court vacated the damages award but affirmed all other aspects of the district court's decision, including the grant of injunctive relief. We held that the district court erred in awarding damages for willful infringement on PlayNation's trademark based solely on the fact that Velex continued to sell Gorilla Gym goods after being served with PlayNation's

4

complaint.  PlayNation Play Sys., Inc., 924 F.3d at 1170.  The Court explained that if that were enough to establish willful infringement, "a valid trademark holder [would] risk[] losing all of its profits if it [did] not immediately cease selling its trademarked product upon receiving a complaint indicating it may be violating the law."  Id.

After the district court entered the injunction, PlayNation discovered that Velex continued to infringe on its mark online, including on its website and on its Amazon page.  Velex had changed the brand name first to "GymX" and then to "Gym1," but it did not remove all appearances of the words "Gorilla Gym" from its online presence.  Velex also failed to remove all of the infringing goods from the stream of commerce.  Two customers who ordered equipment after the injunction was entered and after Velex renamed the products received "Gorilla Gym" branded equipment.  A third customer had ordered a Gym1 playset and received emails indicating that he had purchased an item from "Gorilla Gym CA." This shipment was canceled by Velex two days after PlayNation filed its initial motion for contempt, which cited the other two offending shipments.

PlayNation's amended motion for contempt asked the court to enter a citation for civil contempt against Velex and its sole shareholders and corporate officers, Peter Velikin and Kiril Alexandrov, and to request that the U.S. Attorney prosecute the three for criminal contempt under Federal Rule of Criminal

Procedure 42(a)(2). Velex argued that it had taken more than reasonable efforts to comply and noted that the injunction only prevented it from using the mark in connection with "children's playground equipment or related accessories," so its mere use of the words "Gorilla Gym" did not violate the injunction. It also claimed that the products that were shipped in violation of the injunction were sent in error.

First, Velex explained that one customer, James Carsten, received the Gorilla Gym product because an employee "inadvertently entered the wrong sku" -- "stock keeping unit," a code identifying a particular product -- for his Amazon order. This mistake caused Capacity LLC, the company Velex contracted with for shipping and handling services, to send out the old Gorilla Gym product. Velex said that for the other customer who received an infringing product, Matthew Thornton, Capacity had violated Velex's instructions to remove the products from Gorilla Gym boxes and place them into generic brown boxes. Velex added that it canceled the order of the third customer, Daniel Goldgeier, simply "because it had been mistakenly shipped," without any further explanation of the nature of the mistake or who made the error. In its reply, PlayNation said that another customer, Rachel Gebaide, received Gorilla Gym equipment after Velex had filed its response to the contempt motion. Velex claimed that this was another packing error by Capacity, like the Thornton order.

6

After conducting a hearing, the district court found Velex, Velikin, and Alexandrov in civil contempt by clear and convincing evidence.  The court determined that Velex continued to use "Gorilla Gym" online after the injunction took effect and that customers continued to receive products from Velex in Gorilla Gym boxes, in violation of the injunction.  This evidence sufficed to make out PlayNation's prima facie case that Velex violated the order, shifting the burden to Velex to establish an inability to comply.  Although it accepted that Velex made "substantial" efforts to comply, the trial court concluded that Velex did not take all reasonable efforts to comply with the court order.  Finally, the trial court ordered Velex, Velikin, and Alexandrov to pay compensatory damages in the amount of $1,500 and to pay PlayNation's attorneys' fees and expenses incurred in bringing the motion for contempt.  In a later order, the court set the award for fees and costs at $46,465.25.

Velex, Velikin, and Alexandrov now appeal from the district court's orders holding them in contempt and awarding PlayNation attorneys' fees and costs.

II.

We review an order of civil contempt and the remedial relief granted as a contempt sanction for abuse of discretion.  F.T.C. v. Leshin, 618 F.3d 1221, 1231 (11th Cir. 2010).  The district court's findings of fact are reviewed for clear error. Id. at 1232.

Before reaching Velex's arguments, we must address our jurisdiction to consider the appeal. "[A] timely and properly filed notice of appeal is a mandatory prerequisite to appellate jurisdiction." Holloman v. Mail-Well Corp., 443 F.3d 832, 844 (11th Cir. 2006). PlayNation raises two issues related to the filing of Velex's notice of appeal. First, PlayNation says we lack jurisdiction to review the district court's order as it applies to Velikin and Alexandrov, since Velex filed a notice of appeal only in its corporate name and Velikin and Alexandrov did not file a separate notice. Second, PlayNation argues that Velex's notice of appeal was not timely. We remain unpersuaded.

## A.

Federal Rule of Appellate Procedure 3(c)(1) sets out three requirements for a notice of appeal: it must (1) "specify the party or parties taking the appeal by naming each one in the caption or body of the notice"; (2) "designate the judgment, order, or part thereof being appealed"; and (3) "name the court to which the appeal is taken." Here, the notice of appeal -- styled "Velex' Notice of Appeal" -- stated that Velex, and only Velex, was appealing from the relevant orders to this Court. PlayNation claims that because Velikin and Alexandrov are not mentioned and did not file a separate notice of appeal, we lack jurisdiction over the district court's contempt order as it applies to them.

8

Federal Rule of Appellate Procedure 3(c)(4) provides that "[a]n appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice." As the advisory committee explained, a strict application of Rule 3(c) could result in "the loss of a right to appeal through inadvertent omission of a party's name or [the] use of such terms as 'et al.'" See Fed. R. App. P. 3(c) advisory committee's note to 1993 amendments. For that reason, the committee concluded that "[i]f a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward." Id. We have held that in some cases a party's intent to appeal can be "'objectively clear' from all of the circumstances" when the notice is not "explicit." Holloman, 443 F.3d at 844.

Thus, by example, this Court took jurisdiction over an appeal from a Rule 11 sanction order entered against a party and its attorney when only the party filed a notice of appeal. Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Associated Contractors, Inc., 877 F.2d 938, 939 n.1 (11th Cir. 1989). We explained that a long line of cases held that we had jurisdiction over appeals from fee awards entered against attorneys when the appeal was filed only in the client's name. Id. The Court concluded that "[i]n light of this authority and because of the close privity between a lawyer and his client with respect to the

9

conduct of litigation, it would be unjust to refuse to hear counsel's appeal" from the order imposing sanctions against the attorney.  Id.

Similarly, we think Velex's notice of appeal was sufficient to establish Velikin and Alexandrov's intent to appeal.  The filing specified that Velex was appealing from several orders, including the order awarding attorneys' fees, that involved Velikin and Alexandrov in their personal capacities.  Notably, the district court order held Velex, Velikin, and Alexandrov jointly and severally liable for the fees, just like the Rule 11 sanctions in Latter-Day Saints.  Id. at 941; see also Holloman, 443 F.3d at 845 (holding that the Court lacked jurisdiction over an attorney's appeal when the sanctions were imposed only on the attorney, and the attorney was not listed on the party's notice of appeal and did not file a separate notice).  The relationship between Velikin and Alexandrov and Velex is similarly close to the privity between a lawyer and a client, since they are the company's only officers and shareholders.  And it would have made little sense for Velex to appeal the order only as it applied to the corporation, again like the Rule 11 sanctions imposed by the court in Latter-Day Saints.  If only Velex had appealed, and only Velex prevailed, Velex's officers and shareholders still would have been on the hook for fees, costs, and damages arising out of the contempt finding.  In other words, their interest in the appeal is precisely the same as Velex's as a corporation.  We think it was objectively clear that Velikin and Alexandrov

10

intended to appeal the award of attorneys' fees both as it applied to them and as to the corporation they owned and controlled. Their omission from Velex's notice of appeal does not deprive us of jurisdiction.

B.

PlayNation also argues that Velex failed to timely appeal the district court's December 14, 2017, order holding Velex, Velikin, and Alexandrov in contempt. Federal Rule of Appellate Procedure 4(a)(1)(A) requires a party seeking an appeal to file a notice "within 30 days after entry of the judgment or order appealed from." A judgment or order is entered for the purposes of Rule 4(a) on the date that either the judgment or order is set forth in a separate document or when 150 days have run from entry of the judgment or order. Fed. R. App. P. 4(a)(7)(A).

Three orders are relevant to this timeline. In the first one, on December 14, 2017, the district court found Velex, Velikin, and Alexandrov in civil contempt by clear and convincing evidence, awarded $1,500 in compensatory damages, and held that PlayNation was entitled to recover attorneys' fees. The court did not, however, calculate the amount of attorneys' fees in this order. In a subsequent order dated June 5, 2018, the district court ordered Velex to pay $46,465.25 in fees and costs; this order was accompanied by a judgment set forth in a separate document on the same date. Then, in still another order dated June 12, 2018, the

11

district court amended the June 5 order to provide that Velex, Velikin, and Alexandrov were jointly and severally liable for the fees.

PlayNation argues that the clock began to run after the December 14 contempt order was entered. The district court did not enter a separate document setting out the judgment at that time, so PlayNation says that the deadline to file a notice of appeal was 30 days after 150 days had run from the time the order was entered on the docket. That date was June 13, 2018, and Velex did not file its notice of appeal until July 5. Velex argues, however, that the contempt order was not final and appealable until the amount of the award was actually set in the later order. That would mean that Velex had 30 days after the fee award was set out in the June 5 judgment to file a timely appeal.

Velex has the better of the argument. As we have explained, "[g]enerally a finding of civil contempt is not reviewable on interlocutory appeal," and "[t]he party must wait until a final decree is issued." Combs v. Ryan's Coal Co., 785 F.2d 970, 976 (11th Cir. 1986). When a sanction is entered as a result of the contempt finding, that "render[s] the contempt judgment final and ma[kes] both the finding of contempt and the later sanction order appealable under 28 U.S.C. § 1291." See Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc., 793 F.2d 1529, 1533 n.1 (11th Cir. 1986). The "key" to finality in this context "is whether the contempt penalties imposed are 'conditional or subject to modification.'"

12

Combs, 785 F.2d at 976 (quoting Drummond Co. v. Dist. 20, United Mine Workers of Am., 598 F.2d 381, 384 (5th Cir. 1979)).

Here, there was no final decree until the amount of attorneys' fees and costs awarded as part of the contempt order was set in the June 5 order. See Fort v. Roadway Exp., Inc., 746 F.2d 744, 748 (11th Cir. 1984) ("[A]n order awarding attorney's fees is not final until the amount to be awarded is also determined."). That gave Velex 30 days to file a notice of appeal from both the award of fees and costs and the underlying finding of contempt, because the contempt penalties were subject to modification up until that time. When the district court entered the final judgment, the order containing the finding of contempt "merged into the judgment and [became] subject to review on appeal." Akin v. PAFEC Ltd., 991 F.2d 1550, 1563 (11th Cir. 1993).

Moreover, the time to appeal was extended because PlayNation filed a motion to amend the June 5 order to award fees and costs against Velikin and Alexandrov and not just against Velex. Federal Rule of Appellate Procedure 4 provides that when a party files a motion to alter or amend the judgment under Rule 59, the time to file an appeal runs "from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A)(iv). The district court granted PlayNation's motion to amend in the June 12 order, which was followed by a judgment in a separate document entered on June 13. The time to file an

13

appeal thus began to run on that date, so Velex's July 5 notice of appeal was timely filed within 30 days after the entry of judgment. In fact, Velex had until July 13 to timely appeal.

Because Velex's notice of appeal was filed within the required time period and made it objectively clear that Velikin and Alexandrov also intended to appeal, we have the power to entertain this appeal.

### III.

On the merits, Velex argues that the district court erred in finding it in contempt. "In a civil contempt proceeding, the petitioning party bears the burden of establishing by 'clear and convincing' proof that the underlying order was violated." Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990). After the moving party makes this prima facie showing, "the burden of production shifts to the alleged contemnor to show a 'present inability to comply that goes beyond a mere assertion of inability.'" Id. (quoting Combs, 785 F.2d at 984). "[T]he focus of the court's inquiry in civil contempt proceedings is not on the subjective beliefs or intent of the alleged contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." Id. Still, "substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance." Id.

Velex first argues that it cannot be held liable for the actions of Amazon and Capacity, which it says are not agents of the corporation or Velikin or Alexandrov individually.  Whether there is a principal-agent relationship is irrelevant, however, since Velex admits that at least one of the infringing shipments was sent because of the actions of one its own employees.  Velex said that the wrong product was sent to James Carsten because John Lane, Velex's operations manager, entered the wrong product code, which resulted in Capacity sending the Gorilla Gym product. Thus, it does not matter whether the actions of Amazon or Capacity are attributable to Velex due to an agency relationship, since the injunction was violated in at least one instance by its employee.  Velex was enjoined from "developing, manufacturing, importing, using, marketing, selling, offering for sale, distributing, or installing any children's playground equipment or related accessories under the GORILLA GYM Name."  One of its employees directed a distributor to send a Gorilla Gym product to a customer.  That was a violation of the court order.

In the second place, Velex argues that Velikin and Alexandrov should not have been held in contempt individually.  But "[t]he Supreme Court long ago held that individuals responsible for the affairs of a corporation can be individually held in contempt for disobeying a known injunctive order."  Leshin, 618 F.3d at 1236. As the Court explained:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs.  If they, apprised of

15

the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

United States v. Fleischman, 339 U.S. 349, 357–58 (1950) (quoting Wilson v. United States, 221 U.S. 361, 376 (1911)).  A corporation can act only through individuals, and it was not an abuse of discretion to hold Velikin and Alexandrov -- as Velex's only officers and shareholders -- responsible for the actions that violated the injunction against the corporation.

The only remaining question, then, is whether Velex, Velikin, and Alexandrov are excused from liability for civil contempt because they were unable to comply with the injunction.  "Parties subject to a court's order demonstrate an inability to comply only by showing that they have made 'in good faith all reasonable efforts to comply.'"  Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991) (quoting United States v. Ryan, 402 U.S. 530, 534 (1971)).  Again, "the focus of the court's inquiry in civil contempt proceedings is . . . whether in fact their conduct complied with the order at issue," not the intent of the parties to follow the court's order.  Howard Johnson Co., 892 F.2d at 1516.  And because PlayNation made out a prima facie case that the order was violated, "the burden of production" has shifted to Velex "to show a 'present inability to comply that goes beyond a mere assertion of inability.'"  Id. (quoting Combs, 785 F.2d at 984).

16

The district court's finding that Velex did not meet its burden to show an inability to comply is not clearly erroneous. The district court concluded that "[w]hile they did make substantial efforts, they did not take all reasonable efforts to comply." Velex argues that it in fact took "massive" steps in response to the injunction, and it is clear that it did not simply ignore the court's demands. Among other things, Velex attempted -- mostly successfully -- to remove the words "Gorilla Gym" from its Amazon page and its web presence more broadly, built a new website, directed Capacity to repackage the goods it possessed, and rebranded the products under the "GymX" and "Gym1" names.

Still, Velex has not demonstrated that the district court clearly erred in finding that it did not take all reasonable efforts to comply. For one thing, after the district court issued a permanent injunction, Velex took over two weeks to direct Capacity to remove the products from the infringing packaging and place the products into plain boxes. And Velex did not make any efforts to verify compliance with that system -- which Velex says was "a new system, with which [Capacity employees] are not familiar" -- until after Velex was notified that Capacity was still shipping infringing products. As the district court noted, several "customers still received something with the infringing mark" despite Velex's attempts to re-box the products. It took Velex seven weeks after the injunction to direct Capacity to stop shipping all orders. But by then, Capacity had already

17

shipped infringing goods to both Carsten and Thornton.  What's more, while Velex claims that it responded quickly to reports that Amazon continued to display "Gorilla Gym" on some of its pages, it did not ensure that no infringing references remained before it activated the page under its new name.  Velex would place the entire blame on Capacity and Amazon for these mistakes, but it was Velex's duty to comply with the court's injunction.  The evidence shows that Velex failed to promptly implement a system that would stop the shipment of infringing goods and failed to ensure that its employees and the third parties it worked with complied with that system.

In short, on this record we conclude "that a reasonable person could find a clear and convincing violation" of the injunction and that Velex did not meet its burden to show an inability to comply, so we must affirm.[1]  Howard Johnson Co., 892 F.2d at 1516.  Notably, it is undisputed that multiple customers received shipments of Gorilla Gym goods after Velex was ordered to refrain from "selling,

[1] In their reply brief, Velex argued for the first time that the district court erred in failing to comply with Federal Rule of Civil Procedure 52.  Rule 52(a)(1) requires that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."  The old Fifth Circuit held in binding precedent that a district court must follow Rule 52(a) and set out separate findings of fact and conclusions of law when deciding a motion for civil contempt.  Sanders v. Monsanto Co., 574 F.2d 198, 200 (5th Cir. 1978); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the Fifth Circuit handed down before close of business on September 30, 1981).  But because we do not address issues raised for the first time in reply briefs, see Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam), we decline to address Velex's argument.

offering for sale, distributing, or installing any children's playground equipment or related accessories under the GORILLA GYM Name." The district court's finding that Velex and its officers made some efforts to comply -- but not all reasonable efforts -- is not clearly erroneous. The district court thus did not abuse its considerable discretion in holding Velex and its officers in contempt.

IV.

Last, Velex argues the district court erred in awarding PlayNation attorneys' fees on the contempt proceedings. "[A]n award of attorney fees to the injured party in a civil contempt case is within the district court's discretion." Sizzler Family Steak Houses, 793 F.2d at 1534. As we have explained, this rule "provides parties with an added incentive to monitor and enforce an opponent's compliance with a court order by allowing them to recover their expenses in exposing noncompliance." Id. at 1535. But by awarding fees only to prevailing parties, "it discourages parties from wasting resources on scavenging for nonexistent violations." Id.

Velex argues that because it attempted in good faith to comply with the injunction, it should not be liable for PlayNation's attorneys' fees. But this Court has long held that no willful or intentional violation of a court order is required for attorneys' fees to be granted as a contempt sanction. See id. (explaining that while a lack of willfulness "generally mitigates against a fee award," our cases do not

19

support "the proposition that an award of fees in the absence of willful contempt is automatically an abuse of discretion"). We have previously affirmed an award of attorneys' fees for a mere "failure to take reasonable steps to police" compliance with the court's order, finding that the violation of the order was "at least a reasonably foreseeable consequence" of the party's actions. Id.; see also Food Lion, Inc. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, 103 F.3d 1007, 1017 n.14 (D.C. Cir. 1997) ("[W]e see no reason why a district court should not be authorized to include legal fees specifically associated with the contempt as part of the compensation that may be ordered to make the plaintiff whole, even absent a showing of willful disobedience by the contemnor."). Here, it was not an abuse of discretion for the district court to hold that a fee award was appropriate for the same reasons.

Velex also argues that the amount of fees should be reduced, noting that PlayNation was awarded substantially more in fees and costs than compensatory damages, that it did not prevail on all of its motions for contempt, and that it could have avoided contempt litigation by notifying Velex that infringing products were being distributed. We are unpersuaded. Undeniably, there is some disparity between PlayNation's actual damages and its fees and costs, since the district court awarded PlayNation $1,500 in compensatory damages and $46,465.25 in attorneys' fees and costs. But that does not change the fact that PlayNation's

20

attorneys' fees were "expenses reasonably and necessarily incurred in the attempt to enforce compliance." Rickard v. Auto Publisher, Inc., 735 F.2d 450, 458 (11th Cir. 1984) (quoting Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 827 (5th Cir. 1976)).

If a party in PlayNation's position could not recover its attorneys' fees, it would have a reduced incentive to monitor for violations of court orders, particularly when its provable actual damages are relatively small. Courts have widely noted that "[t]he cost of enforcing [trademark] rights may well be larger than the lost profits in any particular case," but trademark owners have an interest in preventing the weakening of their rights over time. Tamko Roofing Prod., Inc. v. Ideal Roofing Co., 282 F.3d 23, 34 (1st Cir. 2002); see also Processed Plastic Co. v. Warner Commc'ns, Inc., 675 F.2d 852, 858 (7th Cir. 1982) ("This and many other Courts have often recognized that the damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law."). As the former Fifth Circuit said in binding precedent, "[i]n ordering the award of attorneys' fees for compensatory purposes . . . the court is merely seeking to insure that its original order is followed. Otherwise, the benefits afforded by that order might be diminished by the attorneys' fees necessarily expended in bringing an action to enforce that order violated by the disobedient parties." Cook v. Ochsner Found. Hosp., 559 F.2d 270,

21

272 (5th Cir. 1977); see also Perry v. O'Donnell, 759 F.2d 702, 705 (9th Cir. 1985) ("Attorneys' fees frequently must be expended to bring a violation of an order to the court's attention.").

Velex's argument that PlayNation obtained only limited success is also unpersuasive. While it is true that the district court denied PlayNation's second motion for contempt and declined to refer the matter for prosecution as criminal contempt, PlayNation established by clear and convincing evidence that Velex, Velikin, and Alexandrov were in civil contempt and it received compensatory damages. PlayNation's motion for contempt unquestionably succeeded. Cf. Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.").

Finally, we reject Velex's contention that PlayNation had some obligation to attempt to work out the matter with Velex before filing a contempt motion. We have never required a prevailing party to negotiate before filing a contempt motion based on the violation of an injunction, and we decline to impose such a requirement here. It is a "basic proposition that all orders and judgments of courts must be complied with promptly." Maness v. Meyers, 419 U.S. 449, 458 (1975). PlayNation was not required to alert Velex that it believed it had violated the

22

injunction before filing a motion for contempt in the district court.  The long and short of it is that the district court did not abuse its considerable discretion in awarding attorneys' fees to PlayNation.

**AFFIRMED.**