[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11120

Non-Argument Calendar

_____

WENDELL DWAYNE O'NEAL,

Plaintiff-Appellant,

*versus*

ALLSTATE INDEMNITY INSURANCE COMPANY INC,

MORRIS BART LLC,

CLAUDE E. HUNDLEY, III,

KEITH GANN,
Attorney,

ALBERT J. TROUSDALE, II,
Attorney, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:20-cv-00743-LCB

_____

Before JORDAN, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff Wendell O'Neal appeals the district court's order holding him in civil contempt.  After careful review, we affirm.

## BACKGROUND

This is one of several lawsuits filed by Plaintiff that arise out of a 2018 automobile accident.  Unhappy with the settlement agreements from his state-court action concerning the car accident, Plaintiff filed this action seeking federal review of those agreements.  The district court dismissed the suit for lack of subject-matter jurisdiction and determined that sanctions were necessary because of Plaintiff's costly, abusive, and vexatious filing conduct.[1]  Further, based on Federal Rule of Civil Procedure ("FRCP") 11 and the court's inherent powers, the court ordered Plaintiff to pay $6,500 in monetary sanctions to the defendants.  The court also issued a permanent injunction that prohibits Plaintiff from

---

[1] Plaintiff has sued over 400 parties in the past two decades, and all but two of those suits have been without merit.

submitting any court filings without court approval and requires him to post a thousand-dollar bond to commence any lawsuit.

Plaintiff appealed the district court's order. This Court affirmed the dismissal of Plaintiff's suit and the Rule 11 sanctions order in full. *O'Neal v. Allstate Indem. Ins. Co., Inc.*, No. 20-14712, 2021 WL 4852222, at *1 (11th Cir. Oct. 19, 2021). After this Court issued its mandate, the district court ordered Plaintiff to pay the monetary sanctions within a week and directed Defendants to subsequently file status reports stating whether Plaintiff had paid.

Plaintiff moved for leave to obtain relief from the monetary sanctions based on what he characterized as newly discovered evidence that defendant Allstate Indemnity Insurance Co. ("Allstate") had withheld $3,002.86 in insurance proceeds contrary to the settlement agreement in their prior state-court action.[2] Plaintiff claimed the evidence would give the district court subject-matter jurisdiction over his suit and therefore render the court's order dismissing the suit for lack of jurisdiction invalid. Disagreeing, the district court denied the motion after concluding that nothing Plaintiff submitted constituted new evidence nor demonstrated that the court had gained subject-matter jurisdiction over the suit. Plaintiff attempted to file an interlocutory appeal of that order and

---

[2] Defense counsel noted at the subsequent show-cause hearing that Allstate was legally required to pay that portion of the settlement agreement to a hospital that had placed a lien on the insurance proceeds.

the order directing him to pay the monetary sanctions, but the district court held he was not entitled to pursue either appeal.

After Plaintiff failed to pay the $6,500 by the specified deadline, the court scheduled a hearing to give Plaintiff the opportunity to show cause as to why he should not be held in civil contempt. The order expressly stated that imprisonment was a possible sanction if Plaintiff was found in civil contempt. Plaintiff was given leave to file a response to the order, but enjoined from filing any other documents until the hearing.

The show cause hearing was held the next month, on April 4, 2022. At the beginning of the hearing, Plaintiff requested appointment of counsel because he believed the hearing was criminal in nature. The court denied the request, noting that the hearing was for civil contempt.[3] Also, at the hearing, Plaintiff acknowledged his awareness that the order required him to pay $6,500 in sanctions and his understanding that it was the purpose of the hearing to determine the reasons why he had not done so.

In response to the court's question why he had not paid the monetary sanctions ordered by the court, Plaintiff indicated that he been granted social security benefits based on disability and that his Stafford (student) loan had likewise been conditionally discharged

---

[3] In its subsequent order, the district court explained that it had followed the standards set out by the United States Supreme Court in *Turner v. Rogers*, 564 U.S. 431 (2011), in determining that appointment of counsel was not appropriate or required. As noted *infra*, Plaintiff has not properly challenged on appeal the failure to appoint counsel.

because of this disability determination.  According to Plaintiff, his status under the two above programs required that he not earn any money that would put his income above the poverty level.[4]

As to the amount of his social security disability payment, Plaintiff indicated that he thought he received $840 a month, which he estimated would add up to $9,100 a year in social security disability payments, but he referred the court to the document from the Social Security Administration.  That document confirmed that Plaintiff would receive $841 a month for the year 2022, which in fact would total $10,092 a year.

Following Plaintiff's statement suggesting that he had no other source of income, the court inquired about a company with which Plaintiff was affiliated—Thirteenth Dimension, LLC—that Plaintiff had apparently referenced in an earlier affidavit.  Plaintiff responded that Thirteenth Dimension, LLC dealt in crisis management.  According to plaintiff, his work with Thirteenth Dimension involved helping clients with insurance claims by doing research on Google to provide answers for them and then referring them to counsel, if necessary.  He indicated that he had one client now, but that over the last 12 months he had had four different clients in Nevada who were involved in a lawsuit against an insurance company based on an automobile accident.  While these people were still clients, Plaintiff said he was currently unable to help them because their case was dismissed and is on appeal in the Ninth Circuit.

---

[4] In 2022, the poverty level for purposes of federal programs was $13,590.  *See* HealthCare.gov/glossary/federal poverty..

Plaintiff further noted that he was also a plaintiff in that case because, as part of a contingency fee arrangement, the other plaintiffs had assigned to Plaintiff proceeds of their action based on his referral of the case to a law firm in Las Vegas.[5]  Plaintiff stated that the clients in the Nevada action had paid him nothing, but he did not indicate whether the existing client had paid him anything.

At this point in the colloquy, Plaintiff expressed concern that the court's line of inquiry about other potential sources of income required him to become a witness against himself in violation of his Fifth Amendment rights.  In elaborating on this concern, he suggested no worries about a criminal prosecution, but instead his concern about the impact of his testimony and the proceedings on the Department of Education's conditional decision to discharge his student loans.  He noted that he was being monitored for three years by the Department and that if he earned income that put him over the poverty level, the Department could cancel this discharge: a decision that would cost him $50,000 in terms of his student loan debt.  Plaintiff reasoned that if he paid $6,500, this figure, when added to his disability check each month, would put him over the poverty line.  In short, Plaintiff seemed to be concerned that the Department of Education might well inquire where that money came from.

Notwithstanding Plaintiff's reluctance to talk about Thirteenth Dimension, the district court continued the inquiry, asking

---

[5]  Plaintiff has acknowledged that he is not licensed to practice law.

Plaintiff how much he had made with that entity in the last 24 months. When Plaintiff answered, "Probably nothing," the court pointed him to an earlier affidavit he had filed indicating that his employer was Thirteenth Dimension LLC, from whom he made $102.45 a week. Plaintiff responded that this affidavit entry meant that he had made $102.45 the week that the affidavit was filed, which was in February of 2022, not every week. Then, shifting again, Plaintiff added that the money didn't come from a client or even apparently from Thirteenth Dimension, whom he had listed as his employer, but instead from his mom[6] for the help he gave her with her husband and his disability.

The court then asked how much money Plaintiff receives from his mother, but Plaintiff was repeatedly evasive, stating that he didn't know and would have to check his records. Finally, in response to the court's question how much his mother had given him in the last three months, he estimated she had given him $400 in the last three months, but said that she had now stopped giving him money. He couldn't say how much she had given him all total in the last year, but thought it would be less than $400 every three months. Plaintiff also acknowledged that he lived with his mother in her home.

---

[6] The transcript indicates that Plaintiff said that the money came not from a client, but from "a" mom, We infer that the court heard him to say "my mom" because the court's next question was how much money Plaintiff gets from his mother.

The district court next asked Plaintiff what had happened to the $75,000 Plaintiff had received as settlement proceeds from the underlying state court proceedings.  Plaintiff said it was all gone, but was vague in explaining exactly where it had gone, stating, "I think I gave my mom and quite a few other people money," before ultimately stating that he gave his mother $4,000, but providing no figure for the other gifts to unspecified persons that he had allegedly made.

Plaintiff further estimated that he had spent $5,000 to buy office equipment, which he still owns.[7]  He indicated that in the last two years he had spent an unspecified amount to purchase a Chevrolet Camaro, but then traded that car in for a 2020 BMW X3.  He testified, "I think I paid $15,000 or so as a down payment on the BMW."  He estimated that the BMW was currently worth $38,000, and an earlier affidavit stated that the loan amount was approximately $33,000.[8]

In response to the court's inquiry, Plaintiff also said he spends approximately eighty dollars per month on cigarettes and $500 every three months on postage.

---

[7]  An expenditure that is seemingly at odds with Plaintiff's other statements that he was unable to earn outside income because of his receipt of Social Security disability funds and the conditional discharge of his student loan.

[8]  When the hearing was recommenced after the court had found Plaintiff in contempt, Plaintiff indicated that the BMW had "almost 30" miles on it, which we infer to mean 30,000 miles.

At the conclusion of the hearing, the court found that even though Plaintiff had the ability to pay some of the sanctions amount ordered, if not all of the sanctions award, in the many months since entry of that sanctions order, he had paid "not one single dollar." The court thus held Plaintiff in contempt and directed the Marshal to take Plaintiff into custody. The court informed Plaintiff that he could purge this contempt upon the payment of $500, after which the court would issue a new order concerning future payment requirements.

Plaintiff responded, "Where am I going to get the $500 from?" As it turned out, Plaintiff was able to answer his own question, as he quickly found the means to pay the money. Specifically, less than an hour and a half later, Plaintiff was returned to the courtroom having paid that amount to the Marshal. According to the latter, upon being taken into custody, Plaintiff had told the Marshal that he had $400 cash in his car, as well as some credit cards.[9] Ultimately, Plaintiff elected to pay the entire $500 amount via a credit card. Having purged his contempt per the Court's directive to pay immediately $500, Plaintiff was released from custody.

In a subsequent written order, the district court explained that given Plaintiff's evasive, incomplete, and inconsistent answers when discussing his financial means, as well as his body language,

---

[9] Upon the recommencement of the hearing after having made this payment, Plaintiff indicated that a person named Deborah Willard had recently given him $500 after he had helped her with her bankruptcy.

demeanor, pace, and tone, the court found Plaintiff not to be a credible witness.  The court noted that:

> On multiple occasions, the Court had to ask the same question several times because O'Neal would give evasive or incomplete answers.  Further, O'Neal's tone, pace, demeanor, and body language caused the court to find that he was not being entirely truthful.

As a result, the court did not "believe that O'Neal's resources were as limited as he suggests."

Accordingly, the district court indicated that it found, by clear and convincing evidence, (1) that the December 4, 2020 Order at issue was valid, clear and unambiguous; (2) that Plaintiff failed to comply with that order when he failed to pay the sanctions; (3) that Plaintiff was given notice and an opportunity to be heard as to why he should not be held in contempt; (4) that Plaintiff was not a credible witness; and (5) that Plaintiff had the ability to pay the sanctions.

Yet, as the order further stated, even though the court "believes that [Plaintiff] has the ability to pay these sanctions immediately and in full, out of an abundance of caution," the court permitted him to pay the balance due in installments.  Specifically, Plaintiff was required to pay $250 every 60 days until satisfying the $6,000 balance.

Plaintiff timely appealed the district court's civil contempt order.  This Court dismissed Plaintiff's appeal in part and allowed it to proceed in part.  Specifically, we dismissed the part of the

appeal that challenged the validity of the original sanctions and permanent injunction because those issues were decided in Plaintiff's previous appeal. But we held that the appeal may proceed as to the district court's order holding Plaintiff in civil contempt and modifying the monetary sanctions. We now consider that appeal.

## DISCUSSION

### I.    Waived Issues

Because Plaintiff does not argue in his appellate brief that the district court erred by denying his request for counsel at the show cause hearing or that it erred by modifying the monetary sanctions, Plaintiff has waived any argument about these issues. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (explaining that issues not briefed on appeal by a *pro se* litigant are abandoned). "A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it." *Robinson v. Sauls*, 46 F.4th 1332, 1341 n.6 (11th Cir. 2022) (quoting *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012). Nor do we address arguments raised for the first time in a *pro se* litigant's reply brief. *Timson*, 518 F.3d at 874.

Regarding a right to counsel, Plaintiff made no arguments about this issue in his appellant brief.[10] In Plaintiff's reply brief, he

---

[10] Although Plaintiff mentions the right to counsel in a few footnotes, the issue is nonetheless waived because Plaintiff presented no substantive argument on the issue. *See Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F.3d 856, 860 n.1 (11th Cir. 2010) (holding an issue waived where the plaintiff mentioned it in a footnote but presented no substantive argument).

mentioned his alleged right to counsel in a heading but he did not expand upon the argument. Regarding modification of the monetary sanctions, Plaintiff made a few passing references to this issue. However, rather than present any substantive argument on the issue, Plaintiff simply suggested that the district court's modification of the monetary sanctions supports his argument that he could not comply with the Rule 11 sanctions order. We therefore address neither issue in this appeal. Thus, the only issue left on appeal is whether the district court abused its discretion in finding Plaintiff in civil contempt.

## II.    Civil Contempt

### A.    Standard of Review

We review a district court's civil contempt order for abuse of discretion. *PlayNation Play Sys., Inc. v. Velex Corp.*, 939 F.3d 1205, 1210 (11th Cir. 2019) (citing *FTC v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010)). An abuse of discretion occurs when a court makes a clear error of judgment, fails to follow the proper legal standard or process for making a determination, or relies on clearly erroneous findings of fact. *Johnston v. Borders*, 36 F.4th 1254, 1282 (11th Cir. 2022). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with [a] definite and firm conviction that a mistake [was] committed." *Caplan v. All Am. Auto Collision, Inc.*, 36 F.4th 1083, 1089 (11th Cir. 2022) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Federal Rule of Civil Procedure 52(a) demands even greater deference to a district court's findings of fact

that are based on determinations about the credibility of witnesses. *Reiterman v. Abid*, 26 F.4th 1226, 1234–35 (11th Cir. 2022).  This is because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said."  *Id.* (quoting *Anderson*, 470 U.S. at 575).

### B.    Analysis

The district court did not abuse its discretion in finding Plaintiff in civil contempt.  In a civil contempt proceeding, the moving party bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnor violated the underlying court order at issue.  *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 814, 821 (11th Cir. 2010) (*citing Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998).

Once the moving party has made such a showing, the burden of production then shifts to the alleged contemnor to produce evidence providing a satisfactory reason for his noncompliance.  *Id.* Two common explanations for noncompliance are that the contemnor has not violated the order or that he was unable to comply. *Chairs*, 143 F.3d at 1436.  Here, Plaintiff does not argue that he has not violated the order.  Rather, he argues he should have been excused from complying because he could not pay the monetary sanctions ordered by the district court.

The mere assertion of an inability to comply with an order does not satisfy a contemnor's burden of production to show an inability to comply.  *PlayNation*, 939 F.3d at 1212; *Chairs*, 143 F.3d

at 1436.  Instead, a contemnor must demonstrate that he has made "in good faith all reasonable efforts to comply."  *PlayNation*, 939 F.3d at 1213 (internal quotation marks omitted).  This requirement is construed strictly with an emphasis on the "all reasonable efforts" aspect of the analysis.  *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).  Finally, evasive and incomplete testimony does not satisfy the contemnor's burden of production.  *Id.* at 1530 (citing *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988)).

Turning to the current case, we find no error in the district court's conclusion that the Rule 11 sanctions order was lawful and valid.  Indeed, we previously affirmed that order in our earlier decision.  *See O'Neal v. Allstate Indem. Ins. Co.*, No. 20-14712, 2021 WL 4852222, at *1 (11th Cir. Oct. 19, 2021).  And contrary to Plaintiff's argument about new evidence, the district court reviewed Plaintiff's over 319-page filing and concluded that none of it constituted new evidence nor demonstrated that the court had subject-matter jurisdiction over the suit.

In addition, the district court correctly concluded that the Rule 11 sanctions order was clear and unambiguous.  Regarding the monetary sanctions, the order told Plaintiff the exact amount to pay each defendant.  After this Court affirmed that order, the district court ordered Plaintiff to pay the monetary sanctions by a specified deadline.  At the show cause hearing, Plaintiff acknowledged that the Rule 11 sanctions order was specific and told him the exact amount to pay each Defendant.

In short, the district did not err in concluding that a prima facie showing of contempt had been established based on Plaintiff's non-compliance with a legal order directing him to pay monetary sanctions to those he had injured through his abusive and vexatious litigation. Nor do we find clear error in the district court's finding that Plaintiff had failed to shoulder his burden to produce evidence that he was unable to comply with the court's monetary sanction order. In so holding, the district court found Plaintiff not to be credible when he professed a lack of resources as the reason for his non-compliance, as the court found Plaintiff's responses to be evasive, incomplete, and inconsistent.

Plaintiff had received approximately $75,000 as a settlement for his automobile accident. Yet, he offered only the most vague, paltry, and uncorroborated assertions as to where that money had gone, justifying an inference that some of that money should be available to pay a portion, if not all, of his monetary sanctions. *See Wellington Precious Metals, Inc.*, 950 F.2d at 1530 (citing *Roberts*, 858 F.2d at 701) (where a contemnor was ordered to disgorge all the 2.8 million dollars he had received as a result of his fraudulent activities, testimony that he had spent 1.4 million dollars did not adequately explain where the rest of the money had gone).

Further, Plaintiff admitted that he spent approximately $250 a month on cigarettes and postage, received additional money from his mother, and owned a vehicle and office equipment worth thousands of dollars. Nevertheless, notwithstanding these admitted resources and even though he was well aware that a due date

was looming for his payment of these sanctions, Plaintiff made no arrangements to pay even a partial amount of the money he owed.

Yet, even though the district court believed that Plaintiff had the ability to pay the sanctions immediately and in full, it took a conservative approach and required that Plaintiff pay only $500 immediately, with the balance to be paid on installments of $250 a month. As noted, at a minimum, Plaintiff was already spending at least $250 monthly on optional expenses.

For all the above reasons and based on the entire evidence, we are left with no definite and firm conviction that the district court made a mistake when it concluded that Plaintiff could comply with its order. As the district court did not abuse its discretion in finding Plaintiff in civil contempt, we **AFFIRM**.

## CONCLUSION

For the reasons discussed above, the district court's order holding Plaintiff in civil contempt is **AFFIRMED**.